[No. 27295.  *En Banc.*  August 3, 1939.]

GEORGE BECK *et al., Respondents,* v. A. E. DYE *et al.,*
*Appellants.*[1]

[1]Reported in 92 P. (2d) 1113.

2

*Skeel, McKelvy, Henke, Evenson & Uhlmann* and *Smith & Matthews*, for appellants.

*Shank, Belt, Rode & Cook*, for respondents.

STEINERT, J.—This is an action to recover damages for personal injuries sustained by a pedestrian from the impact of an automobile while crossing a street intersection. Trial by jury resulted in a verdict for plaintiffs, husband and wife. Motions for new trial and for judgment notwithstanding the verdict having been denied, judgment on the verdict was entered, from which defendants, also husband and wife, have appealed. The plaintiff wife will be referred to hereinafter as though she were the sole respondent, and the defendant husband will be referred to as though he were the sole appellant.

As grounds for reversal, it is contended (1) that respondent failed to prove any negligence of appellant constituting the proximate cause of the injuries; (2) that respondent was guilty of contributory negligence as a matter of law; and (3) that the court erred in admitting testimony regarding statements made by unidentified bystanders shortly after the accident. The first two contentions relate to the sufficiency and conclusive effect of the evidence, and will be considered together.

A challenge by a defendant to the sufficiency of the evidence admits the truth of plaintiff's evidence and all inferences that reasonably can be drawn therefrom, and requires that the evidence be interpreted

most strongly against the defendant. *Weinman v. Puget Sound Power & Light Co.*, 175 Wash. 73, 26 P. (2d) 395; *Buttnick v. J. & M., Inc.*, 186 Wash. 658, 59 P. (2d) 750; *White v. Consolidated Freight Lines*, 192 Wash. 146, 73 P. (2d) 358; *Vercruysse v. Cascade Laundry Co.*, 193 Wash. 184, 74 P. (2d) 920; *Perren v. Press*, 196 Wash. 14, 81 P. (2d) 867; *Gibson v. Spokane United Railways*, 197 Wash. 58, 84 P. (2d) 349.

The facts, as the jury reasonably might have found them in support of its verdict, may be stated thus: The accident occurred on a Saturday afternoon at about three o'clock, in the intersection of Third avenue and Union street, which is in the down-town district of Seattle. Third avenue runs in a northerly and southerly direction; Union street runs in an easterly and westerly direction. Above the center of the intersection is suspended an automatic traffic signal light, which operates on a sixty-five second cycle, as follows: The light remains green for north and south traffic, and red for east and west traffic, for twenty-eight and one-half seconds; it then turns red in all directions for a period of four seconds, during the last two seconds of which a bell rings; the light then turns green for east and west traffic, continuing red for north and south traffic, and so remains for twenty-eight and one-half seconds; it then turns red again in all directions for another period of four seconds, during the last two seconds of which the bell rings.

Appellant was driving south along Third avenue toward Union street; abreast of him was another automobile proceeding in the same direction. The green signal light was in his favor until he arrived at a point about one hundred thirteen feet north of Union street. At the same time, respondent and about fifteen or twenty other people were standing on the sidewalk at the southwest corner of the intersection waiting for the

signal light to flash green for east and west traffic. When the light changed to green, there was no automobile traffic within the intersection, and the group of pedestrians moved forward, inside the lines of the cross-walk, toward the opposite side of the street. The respondent was in the front rank of four people and slightly ahead of the other three. The light having turned red for north and south traffic, the automobile which was abreast of appellant came to a stop. Appellant, however, continued into and across the intersection at a speed of about twenty-five miles per hour, and without sounding his horn.

Ordinance No. 64692 of the city of Seattle provides:

"On streets where traffic at intersections is controlled by traffic control signals or by police officers, pedestrians shall not cross a roadway against a red or 'STOP' signal and shall not cross at any place except in a marked or unmarked crosswalk. A pedestrian crossing or starting across in any such crosswalk on a green or 'GO' signal shall have the right-of-way over all vehicles, including those making turns, until such pedestrian has reached the opposite curb, and it shall be unlawful for the operator of any vehicle to fail to yield the right-of-way to any such pedestrian."

Appellant's car, passing rapidly across the immediate line of travel of the front rank of pedestrians, brushed the coat of one of them and in all probability would have struck two of them had not others hastily pulled them backward. Respondent, who had then reached a point in the street about ten feet from the west curb, was evidently not aware of appellant's approach and was proceeding forward, when suddenly she came in violent contact with the right side of appellant's car, as a result of which she was thrown to the pavement and severely injured.

The evidence most favorable to appellant was to the effect that he entered the intersection while the green

light was still in his favor, that he was then traveling about ten or fifteen miles per hour, and that, at the time of the impact, his speed had been reduced to about five or six miles per hour; that he did not see respondent until just immediately before the impact; and that respondent came from the curb, without looking to the right or left, and walked directly against the side of his car.

Obviously, there was a direct conflict in the evidence with reference both to the negligence of appellant and its causative effect and to respondent's contributory negligence. The jury reasonably might have believed and adopted either version.

The rule is that where, on a controverted question of fact, there is evidence, or there are justifiable inferences from evidence, upon which reasonable minds might reach different conclusions, the question becomes one of fact for the jury, and not for the court, to decide. *Ahrens v. Anderson,* 186 Wash. 182, 57 P. (2d) 410; *Boyd v. Cole,* 189 Wash. 81, 63 P. (2d) 931; *Corbaley v. Pierce County,* 192 Wash. 688, 74 P. (2d) 993; *Gibson v. Spokane United Railways,* 197 Wash. 58, 84 P. (2d) 349; *Shephard v. Smith,* 198 Wash. 395, 88 P. (2d) 601.

Appellant strenuously contends that respondent at no time looked to her left, else she would have seen appellant's automobile; that she took no precaution for her own safety, but walked blindly into the side of his car. From this, he concludes that she was guilty of contributory negligence as a matter of law.

The jury well may have believed that respondent did what an ordinarily prudent person would have done under like or similar circumstances, that appellant's failure to stop his car on seeing the continued approach of the pedestrians was negligence, and that such neg-

ligence was the sole proximate cause of the injuries to respondent.

Respondent had the right, under the circumstances, to assume that no automobile would enter the intersection against a traffic signal and contrary to law, or would interfere with her lawful progress when the signal was in her favor, and she was entitled to rely upon such assumption until she knew, or, in the exercise of reasonable care should have known, the contrary. *Church v. Shaffer,* 162 Wash. 126, 297 Pac. 1097; *Woods v. Greenblatt,* 163 Wash. 433, 1 P. (2d) 880; *Mathias v. Eichelberger,* 182 Wash. 185, 45 P. (2d) 619.

In support of his contention, appellant cites a number of cases, of which the one most pertinent here is *Estill v. Berry,* 193 Wash. 10, 74 P. (2d) 482. In that case, a pedestrian, on a dark, blustery night in December, was proceeding from the southwest corner of a street intersection toward the opposite curb. At a point about ten or twelve feet out in the street, she suddenly came in contact with the right side of an automobile which, coming from the north, was passing in front of her, and as a result of the impact she was thrown some distance on the pavement. We held that the pedestrian was guilty of contributory negligence as a matter of law.

That case, however, is distinguishable from this in several respects. In the former case, there were no signal lights regulating the flow of traffic at the particular place. The driver of the automobile in that case, after stopping at the arterial sign on the north side of the intersection, was proceeding across in low gear, at a slow rate of speed, and was not violating any traffic ordinance. The lights of his car were shining and were plainly visible. The pedestrian was shielding the left side of her face with her arm as a protection against the weather. Her collision with the car was not due to the negligence of the driver, for he was not

guilty of any negligence, but was solely the result of her failure to take reasonable precaution under the existing circumstances.

In the case at bar, there was sufficient evidence to support the verdict, and in arriving at its verdict the jury must have found that the appellant was guilty of one or more acts of negligence, and that respondent, obedient to the traffic signal and moving with the crowd, was exercising reasonable care. These distinguishing facts make the *Estill* case inapplicable here.

Appellant's remaining contention relates to the admission of certain testimony. A patrolman of the city of Seattle testified that, while he was walking north along Third avenue toward Union street, on the particular afternoon, his attention was attracted by a woman lying unconscious in the street; near her stood an automobile, the driver of which had alighted. The officer did not witness the accident, nor did he know how, or just when, it occurred. Upon seeing the woman in the street, he immediately went to where she lay and, shortly thereafter, with the assistance of appellant, lifted her into the car and accompanied her and appellant to a hospital.

In the course of his examination, he was asked by respondent's counsel whether he had heard anyone at the scene of the accident make any statement as to how it had happened. The witness replied that he had, but he did not know who the persons making the statements were. Appellant's counsel objected to further testimony relative to the subject, upon the ground, among others, that the persons had not been identified. The court overruled the objection upon the theory that the statements were part of the *res gestae,* but restricted the testimony to statements made in the presence and hearing of the appellant. The witness then testified as follows:

"Q. In the presence of Mr. Dye when you went out in the street there tell us what it was. A. Some of these people said he went through the red light. Q. That was the substance of their remarks? A. Yes, sir. They stepped right over there. The Court: What, if anything, did he say? The witness: He did not say anything."

Appellant now contends that these statements of unidentified persons were not properly a part of the *res gestae,* and that the court erred in admitting such testimony.

■ This court has had frequent occasion in the past to consider the so-called *res gestae* rule with respect to the admission of testimony concerning statements made by participants in a transaction or by other persons present thereat. We have taken the pains to examine the cases on the subject as listed in the Washington Digest Annotated, topic "Evidence," key numbers 118 to 128 inclusive; we make this reference only because the cases are too numerous to set forth by specific citation in this opinion.

A careful examination of those cases, read chronologically and as a whole, will reveal that the rule as adopted, declared, and followed by this court requires that the statement or declaration concerning which testimony is offered must, in order to make such evidence admissible, possess at least the following essential elements: (1) The statement or declaration made must relate to the main event and must explain, elucidate, or in some way characterize that event; (2) it must be a natural declaration or statement growing out of the event, and not a mere narrative of a past, completed affair; (3) it must be a statement of fact, and not the mere expression of an opinion; (4) it must be a spontaneous or instinctive utterance of thought, dominated or evoked by the transaction or occurrence itself,

and not the product of premeditation, reflection, or design; (5) while the declaration or statement need not be coincident or contemporaneous with the occurrence of the event, it must be made at such time and under such circumstances as will exclude the presumption that it is the result of deliberation, and (6) it must appear that the declaration or statement was made by one who either participated in the transaction or witnessed the act or fact concerning which the declaration or statement was made.

For the purposes of this case, it may be conceded that the evidence offered by the patrolman possessed the essentials of the first five requirements above stated. However, the sixth essential is lacking. It was not shown, nor is there evidence from which it reasonably can be inferred, that the persons who are purported to have made the statements saw the appellant drive into the intersection against the red light. It is purely a matter of speculation whether they themselves observed the condition of the signal light or were even in the vicinity when appellant drove into the intersection. For aught that the record discloses, they may have been repeating merely what others had told them, or perchance reconstructing the initial occurrence from what they finally saw. The evidence was not admissible as a part of the *res gestae,* in the absence of a showing that the declarants either participated in the transaction or witnessed the act, or fact, concerning which the declarations or statements were made. The term *"res gestae"* is not a mere shibboleth by an indiscriminate use of which every unsworn statement made during a particular transaction or occurrence is to be admitted. It is a doctrine which recognizes that, under certain circumstances, a declaration may be of such spontaneous utterance that, metaphorically, it is an

event speaking through the person, as distinguished from a person merely narrating the details of an event.

Respondent contends, however, that the evidence was admissible as proving an admission by appellant. The rule is that, where a definite statement of a matter of fact is made in the presence or hearing of a party, so that he understands it, in regard to facts affecting him or his rights, and the statement is of such a nature as to call for a reply, and the party addressed is possessed of knowledge concerning the matter referred to, and is not physically disabled from answering, the statement, in connection with a total or partial failure to reply, is admissible in evidence as tending to show a concession of the truth of the facts stated. *McCord v. Seattle Elec. Co.*, 46 Wash. 145, 89 Pac. 491, 13 L. R. A. (N. S.) 349; 16 Cyc. 956; 22 C. J. 321, § 356.

Conceding that the statement, in this instance, was of a definite fact, and assuming that appellant heard and understood it, and was also possessed of knowledge concerning the matter referred to, nevertheless, in our opinion, the statement was not, under the circumstances, of such a nature as to call for a reply from appellant. Neither the appellant nor the patrolman were concerned at that time with the matter of determining who was to blame for the accident; a woman lay unconscious in the street, and the emergency required that their immediate attention be devoted to obtaining medical aid for her as speedily as possible.

The Washington motor vehicle act, in force at the time of the accident, requires that the operator of any vehicle involved in an accident resulting in injury to any person shall render to such person reasonable assistance, including the carriage or arrangements for carriage of the person to a physician or hospital, if it is apparent that medical treatment is necessary or if such carriage is requested by the injured person or on his

behalf. Rem. Rev. Stat., Vol. 7A, § 6360-134 [P. C. § 2696-756] (Laws of 1937, chapter 189, p. 918, § 134). It was the legal, as well as the moral, duty of appellant to render the required assistance, and he was not called upon to enter into a verbal combat with every by-stander, at the risk of having his silence construed against him in a court of law. Were this not so, then every one involved in a traffic accident, no matter how seriously he may have injured some one else, or how blameless he himself may have been, would be com-pelled to hazard a dispute with every one who assumed to charge him with a wrong, or else be regarded as having admitted that the fault was his. We are not inclined to announce such a rule.

The judgment is reversed, with direction to grant a new trial.

BEALS, ROBINSON, SIMPSON, MILLARD, and GERAGHTY, JJ., concur.

JEFFERS, J. (dissenting)—I am unable to agree with the majority opinion that the testimony of officer Floyd I. Green, relative to statements made by a by-stander that "he [appellant] went through the red light," was not admissible as part of the *res gestae*, under the facts in this case, and I therefore dissent from the majority opinion.

Officer Green was only a short distance from the ac-cident at the time it happened, and came upon the scene while respondent was still lying in the street, where she had been struck by appellant's car. Officer Green, with the help of appellant, placed respondent in the car, and at that time, in response to a question asked by Green, the above statement was made, by a bystander unknown to Green.

The majority opinion states that such testimony, to be admissible, must possess the following elements:

"(1) The statement or declaration made must relate to the main event and must explain, elucidate, or in some way characterize that event; (2) it must be a natural declaration or statement growing out of the event, and not a mere narrative of a past, completed affair; (3) it must be a statement of fact, and not the mere expression of an opinion; (4) it must be a spontaneous or instinctive utterance of thought, dominated or evoked by the transaction or occurrence itself, and not the product of premeditation, reflection, or design; (5) while the declaration or statement need not be coincident or contemporaneous with the occurrence of the event, it must be made at such time and under such circumstances as will exclude the presumption that it is the result of deliberation; and (6) it must appear that the declaration or statement was made by one who either participated in the transaction or witnessed the act or fact concerning which the declaration or statement was made."

The majority opinion concedes that the evidence offered possessed the essentials of the first five requirements, but is lacking in the sixth essential.

I agree with the majority opinion as to the essential elements set out in the first five requirements, and I also agree that the rule assumes that any such statement, to be admissible, must be made by one who saw or participated in the accident.

The majority opinion states that it was not shown, nor is there evidence from which it reasonably can be inferred, that the person who is purported to have made the statement saw appellant drive through the red light. It is true there is no positive statement by declarant that he witnessed the accident, other than the statement, "He went through the red light," but, keeping in mind that all the essential elements set out in the majority opinion were present, unless it be that it does not appear that declarant saw appellant drive

through the red light, I am forced to the conclusion that at least it is a reasonable inference that declarant saw the act that he described, and that the statement was therefore properly submitted to the jury.

The following rule is announced in 3 Jones Commentaries on Evidence (2d ed.), 2220, § 1209:

"It is true that the language in a few cases would seem to deny, or cast doubt upon, the admissibility of declarations, as part of the *res gestae*, of mere bystanders who are non-actors. But, as we have stated, the majority of cases clearly hold that declarations of mere bystanders are admissible when properly meeting the *general requirements* of the doctrine." (Italics mine.)

The theory on which statements of this character are received is stated in Jones on Evidence, *supra,* at p. 2223, § 1210:

"The theory upon which *res gestae* declarations of the type here under discussion are admitted in evidence without the sanctity of an oath is that such declarations derive their credibility from the stress of circumstances under which they are made and not from the trustworthiness of the person making them. Accordingly, it may be stated as a general rule which follows naturally from the logic upon which such declarations are admitted, that competency of the declarant as a witness is not a prerequisite to admissibility."

See, also, 10 R. C. L. 980, § 162; *Kenney v. State,* 79 S. W. (Tex. Crim. App.) 817.

In the early case of *Britton v. Washington Water Power Co.,* 59 Wash. 440, 110 Pac. 20, 33 L. R. A. (N. S.) 109, cited by textwriters on this subject, and referred to in practically all of the subsequent decisions by this court, one of respondent's witnesses, upon direct examination, stated that, when the boy was observed riding upon the steps, the conductor pulled the bell cord and started to open the door, *when someone said,*

"The boy is off." This statement was stricken, on motion of the respondent. This court held the statement should have been admitted, and that, in striking the statement, the trial court committed prejudicial error. In the cited case, it does not appear that the witness knew who the person that made the statement was, nor does it appear, other than from the statement made by the bystander that "The boy is off," that he saw the act he described, but certainly it is a reasonable inference that the declarant did see the act he described. If we are to indulge in any presumptions in favor of respondents' testimony to support the verdict herein, it surely is a reasonable inference to draw from the facts that the declarant in the instant case saw appellant go through the red light.

This court has had this question before it in *Heg v. Mullen,* 115 Wash. 252, 197 Pac. 51; *Mathewson v. Olmstead,* 126 Wash. 269, 218 Pac. 226; *Field v. North Coast Transportation Co.,* 164 Wash. 123, 2 P. (2d) 672, 76 A. L. R. 1114; and *Duvall v. Pioneer Sand & Gravel Co.,* 191 Wash. 417, 71 P. (2d) 567, but in none of these cases, so far as I have been able to determine, does it appear that the declarant saw the accident, other than as that fact may be inferred from the declarant's statement, as in the case at bar.

It seems to me the majority opinion, instead of admitting all reasonable inferences in favor of the testimony in question, indulges in speculation to sustain the contention that the sixth essential necessary to make the testimony admissible is lacking.

I am therefore of the opinion that the statement testified to by officer Green as having been made by a bystander meets all the requirements of the *res gestae* rule, and was properly admitted by the trial court.

I concur in the majority opinion in regard to the other questions raised.

I think the judgment of the trial court based upon the verdict of the jury was right, and should be affirmed.

BLAKE, C. J., and MAIN, J., concur with JEFFERS, J.