[No. 15141–0–I.   Division One.   June 9, 1986.]

THE STATE OF WASHINGTON, *Respondent,* v. ALFRED
WILLIAM WHITNEY, *Appellant.*

18

[Black redacted boxes]

*James E. Lobsenz* and *Lenell Nussbaum* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Barbara B. Linde, Deputy,* and *Julie Cwinar, Legal Intern,* for respondent.

SWANSON, J.—Upon his jury conviction of first degree rape, Alfred William Whitney appeals the judgment and sentence on grounds of the insufficiency of the evidence to prove the offense's kidnapping element and the trial court's failure to instruct the jury that unanimity was required on at least one of the two alternate means of committing first degree rape.

On January 4, 1984, the 12–year–old victim, a resident of Vashon Island, had gotten off the school bus near the driveway entrance to her home, which was about 1/2 mile from the house, when she was confronted by a man, later identified as Whitney, who pulled out a knife and told her to get into his car. He threatened to set his Doberman pinscher, which was inside the car, on her if she did not comply. After she was forced into the car, Whitney had her get down on the floor under the dashboard on the passenger side and covered her with a coat. After driving down the road for about 2 minutes, Whitney stopped the car and, holding a knife in his hand, had her disrobe and then had sexual intercourse with her.

Afterward he drove down a dirt road to an area where some cabins were located and let the victim out of the car,

telling her to wait 15 to 20 minutes before leaving. After waiting 5 minutes, the victim walked about 2½ miles home, where she told her mother what had happened, and the police were called.

At trial the victim testified that a photograph of Whitney's car was similar to the rapist's gold car and identified a silver necklace belonging to Whitney, which he admitted wearing on that day. Prior to trial, she had selected Whitney's photo from a photo montage. A Washington State Ferries purser, who had known Whitney for a number of years, testified that on January 4, 1984, she saw him, along with his dog, drive onto the 10:30 or 11:30 a.m. Vashon Island ferry at the Point Defiance Ferry Terminal in his gold Montego car. A Vashon Island resident, who was a high school acquaintance of Whitney, testified that on the same day he saw Whitney and his dog in his gold car getting off the Vashon Island ferry at Point Defiance at about 4:10 p.m.

Whitney was charged with and convicted by a jury[1] of first degree rape based upon the use or threatened use of a deadly weapon and a kidnapping in violation of RCW 9A.44.040(1)(a) and (b),[2] and he now appeals.

The issues raised in this appeal are (1) whether there was sufficient evidence of the kidnapping alternative of first degree rape and (2) whether the jury unanimity requirement was met where a unanimous verdict found Whitney

---

[1] A first trial ended in a mistrial based upon the defendant's alleged incompetency. Prior to the second trial, which resulted in his conviction, the trial judge found him competent to stand trial after a competency hearing.

[2] RCW 9A.44.040(1) provides:

"(1) A person is guilty of rape in the first degree when such person engages in sexual intercourse with another person by forcible compulsion where the perpetrator or an accessory:

"(a) Uses or threatens to use a deadly weapon or what appears to be a deadly weapon; or

"(b) Kidnaps the victim; or

"(c) Inflicts serious physical injury; or

"(d) Feloniously enters into the building or vehicle where the victim is situated."

guilty of first degree rape committed by alternate means, both of which were supported by evidence beyond a reasonable doubt.

## SUFFICIENCY OF THE EVIDENCE

First, relying primarily upon *State v. Ingham,* 26 Wn. App. 45, 612 P.2d 801, *review denied,* 94 Wn.2d 1008 (1980), Whitney argues that the kidnapping was incidental to the rape so that under the merger doctrine the evidence of a kidnapping was insufficient to support a first degree rape conviction based upon the kidnapping alternative. However, merger doctrine cases like *State v. Ingham* are inapposite. The issue in those cases is whether independent proof existed to preclude merger of a kidnapping charge with a rape charge based on a kidnapping. Here no merger is involved since Whitney was not charged with or convicted of kidnapping in addition to rape. *State v. Harris,* 36 Wn. App. 746, 754, 677 P.2d 202 (1984).

██ The question here is whether, viewing the evidence most favorably to the State, any rational trier of fact could have found the essential elements of a kidnapping beyond a reasonable doubt. *State v. Green,* 94 Wn.2d 216, 221–22, 616 P.2d 628 (1980); *State v. Harris, supra* at 753. *Green, supra* at 228–30, upon which Whitney relies, required evidence of restraint by means of a deadly force other than the ultimate killing to elevate first degree murder to aggravated first degree murder where the aggravated first degree murder charge was based upon a kidnapping alternative. In the instant case sufficient evidence must exist of both the forcible compulsion element of rape as well as the restraint necessary for a kidnapping to elevate the rape to first degree rape. *State v. Harris, supra* at 753–54; *State v. Byrd,* 30 Wn. App. 794, 797, 638 P.2d 601 (1981).

The unchallenged jury instruction 12 set forth and defined the kidnapping elements, including the requisite restraint:

A person commits kidnapping when he or she intentionally abducts another person.

Abduct means to restrain a person by either secreting or holding the person in a place where that person is not likely to be found or using or threatening to use deadly force. Restraint means to restrict a person's movements without consent and without legal authority in a manner which interferes substantially with that person's liberty. Restraint is without consent if it is accomplished by physical force, intimidation or deception or any means including acquiescence, if the victim is a child less than 16 years old and if the parent, guardian or other person having lawful control or custody of the victim has not acquiesced.

The unchallenged jury instruction 9 defined "forcible compulsion":

Forcible compulsion means physical force which overcomes resistance, or a threat, express or implied, that places a person in fear of death or physical injury to oneself or another person or in fear of being kidnapped or that another person will be kidnapped.

The victim's testimony was that Whitney pulled out a knife and told her to get into the car and that if she did not, he would set his Doberman pinscher on her. He ordered her to get down under the dashboard on the passenger side and covered her with a coat while he drove a short distance down the road. While holding a knife, he forced her to disrobe and have sexual intercourse with him. Viewing the evidence in a light most favorable to the State, a rational trier of fact could have found the victim's intentional abduction independent of the rape by being physically restrained without her consent by the use or threatened use of a knife and an intimidating dog and by secreting or holding her in his car, a place where she was not likely to be found. *State v. Harris, supra.*

## JURY UNANIMITY

The next issue is whether the jury unanimity requirement was met. A defendant may be convicted only when a unanimous jury concludes that he has committed

the crime charged in the information. *State v. Petrich*, 101 Wn.2d 566, 569, 683 P.2d 173 (1984). When a defendant is charged under a criminal statute that describes not separate and distinct offenses but rather a single offense that may be committed by alternate means, jury unanimity is required as to the commission of the crime but not as to the alternate means, provided that each alternative charged is supported by sufficient evidence. *Petrich; State v. Arndt*, 87 Wn.2d 374, 377, 553 P.2d 1328 (1976); *State v. Ellison*, 36 Wn. App. 564, 574, 676 P.2d 531, *review denied*, 101 Wn.2d 1010 (1984).

Relying upon *Green*, at 216, Whitney argues that assault and kidnapping are separate and distinct crimes that elevate second degree rape to first degree rape so that the trial court erred in not instructing the jury that unanimity as to at least one of the underlying crimes was required to support a first degree rape conviction.[3]

In *Green*, the defendant was convicted of aggravated first degree murder in violation of former RCW 9A.32.045(7) (1975),[4] which at the time required the commission of first degree murder in the course of or in furtherance of a rape or kidnapping. The *Green* court found that the alternative ways of committing aggravated first degree murder, *i.e.*, rape and kidnapping, were themselves separate and distinct crimes and stated that

> [w]here, as here, the commission of a specific underlying crime is necessary to sustain a conviction for a more serious statutory criminal offense, jury unanimity as to the underlying crime is imperative.

*Green*, at 233, *quoted in State v. Ellison, supra* at 575.

The State argues that the above quoted language, upon which Whitney relies, is mere dicta, not binding authority,

---

[3]Although the defendant did not object at trial to the trial court's failure to give such a jury instruction, this alleged error, which impinges upon the jury trial right, may be raised for the first time on appeal. *State v. Russell*, 101 Wn.2d 349, 354, 678 P.2d 332 (1984); *State v. Green*, 94 Wn.2d 216, 231, 616 P.2d 628 (1980).

[4]RCW 9A.32.045 was repealed in 1981. Laws of 1981, ch. 138, § 24, p. 546.

since the *Green* decision turned on the insufficient evidence to support the kidnapping alternative. *State v. Franco*, 96 Wn.2d 816, 824, 639 P.2d 1320 (1982); *see State v. Petrich, supra* at 570; *State v. Ellison, supra* at 575–76. Without a unanimous jury determination that there was a rape or kidnapping or both, it was possible that some jurors had based their belief of guilt on the invalid kidnapping grounds. *State v. Franco, supra; State v. Ellison, supra* at 575. The *Franco* court stated that

> *Green* did *not* hold that in all cases of aggravated murder there must be separate jury verdicts regarding each method. That issue was not before the court.

*State v. Franco, supra* at 824.

Even if *Green* imposes a unanimity requirement as to the alternate means of committing a crime where the means themselves constitute separate crimes, however, *Green* is not controlling here. We conclude that the first degree rape statute describes not separate and distinct offenses but rather a single offense that may be committed by alternate means which, unlike in *Green*, at 233, are not themselves separate and distinct crimes; consequently, jury unanimity was not required as to each alternative since sufficient evidence supported each alternate means. *State v. Arndt, supra.*

In determining whether the legislative intent underlying a criminal statute was to define a single crime that may be committed by different means or to define multiple offenses, the following factors are considered:

> [1] the title of the act; [2] whether there is a readily perceivable connection between the various acts set forth; [3] whether the acts are consistent with and not repugnant to each other; [4] and whether the acts may inhere in the same transaction.

*Arndt*, at 379 (quoting *State v. Kosanke*, 23 Wn.2d 211, 213, 160 P.2d 541 (1945)); *accord, State v. Ellison, supra* at 574.

Former RCW 9.79.170, which contained, in substantially the same form as the current RCW 9A.44.040, subsections

(1)(a) through (d), (a) and (b) of which are at issue here, was passed as part of an act "[r]elating to the revision of rape laws". Laws of 1975, 1st Ex. Sess., ch. 14, § 4, p. 174. This title is evidence that the statute proscribes a single crime, rape, which may be committed by one or more of the specified statutory alternative means. *See State v. Orsborn,* 28 Wn. App. 111, 117, 626 P.2d 980 (1980), *review denied,* 97 Wn.2d 1012 (1982).

Further, the readily perceivable connection between the acts set forth in RCW 9A.44.040(1)(a) and (b) is a common object: having unlawful sexual intercourse, though with different accompanying circumstances. *See State v. Arndt, supra* at 381. Upon examining RCW 9A.44, a Washington court noted that this chapter's comprehensiveness, providing for different grades of punishment depending on the rape's underlying circumstances, suggested that the Legislature's primary intent was to prohibit acts of unlawful sexual intercourse, with a second objective being to make punishment dependent on the accompanying circumstances. *State v. Birgen,* 33 Wn. App. 1, 9, 651 P.2d 240 (1982), *review denied,* 98 Wn.2d 1013 (1983).

The alternate methods of committing first degree rape are not repugnant to each other: proof of an offense under one subsection does not disprove an offense under one of the other subsections. Moreover, the prohibited acts may inhere in the same transaction. *See State v. Orsborn, supra* at 117–18.

In *State v. Orsborn, supra* at 116–18, the appellate court applied the test set forth in *State v. Arndt, supra* at 379, and held that the former negligent homicide statute, RCW 46.61.520(1),[5] describes not multiple offenses but rather a single crime which can be committed by several means so

---

[5]Former RCW 46.61.520(1) provides:

"When the death of any person shall ensue within three years as a proximate result of injury received by the driving of any vehicle by any person while under the influence of or affected by intoxicating liquor or drugs, or by the operation of any vehicle in a reckless manner or with disregard for the safety of others, the person so operating such vehicle shall be guilty of negligent homicide by means of a motor vehicle." RCW 46.61.520 was amended in 1983. Laws of 1983, ch. 164, § 1, p. 719.

that jury unanimity on each means was not required as long as sufficient evidence supported each means. *Accord, State v. Sanchez,* 42 Wn. App. 225, 232–33, 711 P.2d 1029 (1985), *review denied,* 105 Wn.2d 1008 (1986). The three alternate means of committing negligent homicide are causing a person's death by driving a vehicle (1) while under the influence of intoxicating liquor or drugs, (2) in a reckless manner, and (3) with disregard for the safety of others. *Sanchez,* at 232. The *Orsborn* court distinguished *Green,* at 216, on grounds that unlike in *Green,* the alternate means of committing negligent homicide do not constitute separate crimes and the sufficiency of the evidence supporting each alternate means instructed upon was not challenged. *State v. Orsborn, supra* at 118.

Similarly here we hold that the alternative means of committing first degree rape do not constitute separate and distinct offenses; indeed, the two means of committing first degree rape at issue here could inhere in the same incident, as we so find. *See State v. Orsborn, supra; cf. State v. Flowers,* 30 Wn. App. 718, 722–23, 637 P.2d 1009 (1981) (alternate factual circumstances upon which first degree arson may be based are not separate and distinct crimes), *review denied,* 97 Wn.2d 1024 (1982). Sufficient evidence exists of each of the alternate means instructed upon so that viewing the evidence in a light most favorable to the State, a rational trier of fact could have found each means was proved beyond a reasonable doubt. *Green,* at 221–22; *State v. Sanchez, supra* at 232; *State v. Flowers, supra* at 723.

The judgment is affirmed.

SCHOLFIELD, C.J., and JOHNSEN, J. Pro Tem., concur.

Reconsideration denied September 15, 1986.

Review granted by Supreme Court December 2, 1986.